**In the Interest of: J.N., a Minor Defendant, Appellant**

Superior Court of Pennsylvania.

Submitted Jan. 24, 2005.

Filed May 25, 2005.

Reargument Denied July 29, 2005.

Rebecca R. Good, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before: KLEIN, BOWES, and KELLY, JJ.

KELLY, J.:

¶ 1 Appellant, J.N., appeals from the dispositional order entered in the Allegheny County Court of Common Pleas, following his delinquency adjudication [1] for possession of marijuana.[2] Appellant asks us to determine whether the trial court erred when it denied his motion to suppress all evidence obtained as a result of an investigatory detention subsequent to a routine traffic stop. We hold the investigative detention of Appellant was lawful under the circumstances of this case and the suppression motion was properly denied. Accordingly, we affirm.

---

1. 42 Pa.C.S.A. § 6301.

2. 35 P.S. § 780–113(a)(16).

¶ 2 The relevant facts and procedural history are as follows. On Monday, March 8, 2004, at approximately 10:00 p.m., Officer Gregory McCulloch of the Mifflin Police Department made a routine traffic stop of a vehicle. Officer McCulloch stopped the vehicle after he observed the driver make an illegal right turn and noticed the automobile had a broken taillight. The driver and Appellant were the only occupants of the vehicle. Appellant was sitting in the front passenger seat. Officer McCulloch checked the driver's information and told the driver he would receive a citation in the mail. As Officer McCulloch stood next to the driver's window, he heard Appellant say something and recognized Appellant as a resident of his neighborhood. Officer McCulloch asked Appellant if he was J.N., and Appellant replied in the affirmative. The officer testified he could not recall whether he had returned the driver's license and registration at the time he recognized Appellant.

¶ 3 The trial court further explained:

Officer McCulloch testified that a few days earlier, the Whitaker Police Department had a "pretty serious incident" that involved guns and a couple of juveniles being beaten with guns. Officer McCulloch was informed that on Saturday night [Appellant] and an adult assaulted a couple of men with a gun in Whitaker. Officer McCulloch testified at the hearing that he thought that Whitaker had a warrant for [Appellant], although in fact, they were still in the process of getting the warrant. Nevertheless, Officer McCulloch testified [Appellant] had been known to have a weapon [with] him in the past.

(Trial Court Opinion, dated June 30, 2004, at 1–2). Officer McCulloch also testified he had received the information regarding Appellant from the Whitaker Police Department in an email and had spoken to another officer about the information. Officer McCulloch said he remembered the information because he was familiar with Appellant.

¶ 4 Upon recognizing Appellant, Officer McCulloch ordered him out of the automobile. A second police officer arrived at the scene after Appellant was ordered out of the vehicle. After exiting the vehicle, Appellant threw a small, knotted bag of marijuana onto the ground. Then Officer McCulloch searched Appellant. On his person, the officer found two more small bags of marijuana, $383.00 in cash, and a cellular phone.

¶ 5 On April 15, 2004, Appellant filed a motion to suppress all evidence seized during the encounter. On April 19, 2004, the trial court heard testimony and arguments on Appellant's motion to suppress. The court denied the motion and held a hearing on Appellant's delinquency petition. The court adjudicated Appellant delinquent with respect to his possession of marijuana. The court ordered Appellant to be placed on probation and to complete one hundred hours of community service. Appellant was also ordered to remain on electronic home monitoring as a condition of his probation, and pay $25 to the Crime Victim's Compensation Fund. In addition, the court ordered Appellant to undergo drug and alcohol evaluation and comply with any recommendations of the evaluation. On May 17, 2004, Appellant filed a notice of appeal. On May 25, 2004, the trial court ordered Appellant to file a Rule 1925(b) statement of matters complained of on appeal within fourteen days. On June 7, 2004, Appellant filed a motion for extension of time in which to file a Rule 1925(b) statement, and filed the statement on June 11, 2004.

¶ 6 Appellant raises the following issue for our review:

[WERE APPELLANT'S] PA.CONST. ART 1 § 8 AND U.S. CONST. AMEND. IV RIGHT[S] TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES VIOLATED WHEN THE [TRIAL] COURT FAILED TO GRANT HIS SUPPRESSION MOTION WHERE NO REASONABLE SUSPICION EXISTED TO SUPPORT THE INVESTIGATORY DETENTION AND THE ENSUING PAT–DOWN WAS NOT JUSTIFIED?

(Appellant's Brief at 5).

¶ 7 Appellant asserts the original purpose of the traffic stop had concluded prior to his investigatory detention. Appellant argues his subsequent investigatory detention was not supported by reasonable suspicion. Appellant concludes the evidence found as a result of detention should have been suppressed. In the alternative, Appellant suggests even if the investigatory detention was supported by reasonable suspicion, the officer did not have enough articulable and particularized facts to establish probable cause for a custodial interrogation. Appellant concludes the evidence resulting from his custodial interrogation should have been suppressed. We disagree.

 ¶ 8 Our review of the denial of a suppression motion is limited to determining whether the trial court's factual findings are supported by the record and the legal conclusions drawn from those facts are correct. *Commonwealth v. Wright,* 867 A.2d 1265, 1267 (Pa.Super.2005). Where the prosecution prevails in the suppression court, we may consider only the evidence of the prosecution and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole. *Id.* Where the record supports the trial court's factual findings, we are bound by those facts and only

reverse if the legal conclusions are in error. *Id.* Moreover, we defer to the trial judge's credibility determinations. *Id.*

Our Supreme Court has recognized expressly that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety. Once the primary traffic stop has concluded, however, the officer's authority to order either driver or occupant from the car is extinguished. Thus, if subsequently the officer directs or requests the occupants to exit the vehicle, his show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion. The matter of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a "brightline" definition.

*Commonwealth v. Reppert,* 814 A.2d 1196, 1202 (Pa.Super.2002) (some internal citations omitted) (emphasis added). *See also Commonwealth v. Freeman,* 563 Pa. 82, 88–89, 757 A.2d 903, 906–907 (2000) (stating factors relevant to "endpoint" assessment in consensual search include existence of clear and expressed end to prior detention). In addition,

to justify a frisk under [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

This Court also recognized in *Commonwealth v. Myers,* 728 A.2d 960 (Pa.Super.1999), that "[t]o justify a frisk incident to an investigatory stop, the police

need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' .... .becomes meaningless." *Id.* at 963.

*Commonwealth v. Preacher,* 827 A.2d 1235, 1239 (Pa.Super.2003) (some internal citations and quotation marks omitted) (emphasis in original).

¶ 9 Instantly, Appellant concedes Officer McCulloch had probable cause to effectuate the initial traffic stop based on the driver's illegal turn and broken taillight. Based upon our review of the record, we determine there was no endpoint to the initial detention, clear and expressed or otherwise, prior to the time Officer McCulloch recognized Appellant. *See Reppert, supra.* Specifically, we note Officer McCulloch recognized Appellant while standing next to the stopped vehicle and had not told Appellant or the driver they were free to go. In addition, there was no testimony the driver's license and registration had been returned. *Id.* Thus, Officer McCulloch did not need renewed or further showing of reasonable suspicion to request Appellant to leave the vehicle. *Id.* Furthermore, before Officer McCulloch was able to conduct the *Terry* frisk, Appellant dropped a bag of marijuana, providing probable cause for Appellant's arrest. *See Wright, supra.*

¶ 10 When Officer McCulloch recognized Appellant and Appellant identified himself, the officer recalled he had information that Appellant had been involved in a violent incident involving a weapon two days earlier. (*See* N.T., Adjudication Hearing, 4/19/04, at 4–7). Although Officer McCulloch did not know whether or not there was an outstanding warrant for Appellant's arrest for the violent crime, he had a duty to check the records before allowing Appellant and his friend drive

away. Because it was 10:00 o'clock at night and Appellant was known to carry a gun, Officer McCulloch had specific and articulable facts to explain his belief Appellant was armed and dangerous warranting a *Terry* frisk before he started checking to see whether there was an outstanding warrant. *See Wright, supra; Preacher, supra; Reppert, supra.* For the foregoing reasons, we hold the investigative detention of Appellant was lawful under the circumstances of this case. Accordingly, we affirm the trial court's order.

¶ 11 Order affirmed.