J-S03020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JENNIFER LYNN WHITE | |
| Appellant | No. 971 EDA 2015 |

Appeal from the Judgment of Sentence March 4, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001720-2014

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.: **FILED APRIL 08, 2016**

Jennifer Lynn White appeals from the judgment of sentence imposed on March 4, 2015, in the Court of Common Pleas of Chester County. On December 16, 2014, at the conclusion of a bench trial, the court convicted White of two counts of possession of a controlled substance (clonazepam and alprazolam), two counts of possession of drug paraphernalia, and one count of criminal trespass (defiant trespasser).[1] The court sentenced White to a term of two months to 11½ months' imprisonment and one year probation. On appeal, White raises suppression and sufficiency issues. After

_____

[1] 35 P.S. §§ 780-113(a)(16) and (a)(32), and 18 Pa.C.S. § 3503(b)(1)(i), respectively.

a thorough review of the submissions by the parties, the certified record,

and relevant law, we affirm.

The underlying facts in this matter are taken from the suppression

hearing, as forth by the trial court:

> On August 13, 2013, [White] was in a McDonald's restaurant located at 1820 E. Lincoln Highway in Caln Township, Chester County. Carolyn Ortega, the manager of the McDonald's, observed [White] having a verbal argument with a female friend. Ms. Ortega heard [White] use obscenities, which was disturbing to both the customers and the employees. Ms. Ortega asked [White] to leave the property. [White] responded that she was on public property and Ms. Ortega could not make her leave. [White] continued her argument with her friend. Ms. Ortega asked [White] to leave a second time. [White] then exited the restaurant, but returned and began a verbal argument with one of the employees, again using profanity. Ms. Ortega observed that [White] was loud, rude and aggressive. [White] then left the store and Ms. Ortega contacted the Caln Township police.
>
> After [White] left the store, Ms. Ortega observed [White] in the parking [lot] on the McDonald's surveillance camera. [White] was lying on the sidewalk, with her top raised, exposing the top half of her body. Approximately 20 minutes later, Sergeant Steven Parkinson of the Caln Township Police Department arrived. Ms. Ortega asked Sergeant Parkinson to remove [White] from the McDonald's property and tell her that she was not permitted to return to the property. Ms. Ortega personally told [White] to leave the property and informed her that she was not permitted to return to the property. Sergeant Parkinson also told [White] she was no longer permitted on the property and that she must leave and not return, or she could be arrested for trespassing. Sergeant Parkinson testified that he told [White] she could not be on any part of the property and [White] appeared to understand what he meant by that. [White] eventually left the premises, but told Ms. Ortega that she could not stop her from coming onto the property.

On January [31], 2014, during the morning hours, Ms. Ortega was on duty as the McDonald's manager and saw White in a vehicle in the McDonald's parking lot. [White] was in the passenger seat of a green SUV which entered the McDonald's parking lot several time[s] that morning. Ms. Ortega did not observe [White] get out of her car or go inside the restaurant on January 31, 2014, nor did she see [White] driving the vehicle. Ms. Ortega did not confront [White] when she saw her in the vehicle because she had safety concerns based upon [White]'s past aggressive behavior.

Later that morning, Sergeant Parkinson conducted a routine property check at McDonald's. Sergeant Parkinson testified that this McDonald's was located in a high-crime area where he has made numerous arrests for crimes involving drugs and public drunkenness, and has received numerous complaints about loitering. Sergeant Parkinson went inside and Ms. Ortega told him that [White] had been on the property earlier in the morning. When Sergeant Parkinson returned to his vehicle, he saw a green vehicle with [White] in the passenger seat enter and circle through the McDonald's parking lot. Sergeant Parkinson conducted a traffic stop based upon the fact that [White] had been told previously she was not permitted to enter the property. Sergeant Parkinson then arrested [White] for criminal trespass.

Trial Court Opinion, 6/3/2015, 2-4 (record citations omitted). During the search incident to arrest, the sergeant discovered two amber pill bottles, containing 17 clonazepam tablets (2 milligrams each) and 1 alprazolam tablet (2 milligrams).[2] White was also charged with two counts of

_____

[2] Specifically, Sergeant Parkinson testified:

One of the pill bottles was marked for Jennifer White, and the label stated that it should have contained clonazepam, one milligram. In that pill bottle I found two pills -- or three pills.

*(Footnote Continued Next Page)*

- 3 -

possession of a controlled substance and two counts of possession of drug paraphernalia.

White filed an application for suppression of evidence on November 7, 2014. A hearing was held three days later. On November 12, 2014, the court denied motion. The matter proceeded to trial. On December 16, 2014, the trial court, sitting without a jury, found White guilty of all charges. On March 4, 2015, the court sentenced White to a term of two months to 11½ months' imprisonment for one count of possession of a controlled

*(Footnote Continued)* ————————————

> Two of the pills were marked with T-e-v-a, 834, I believe. I have used the drugs.com, which was referred to me by the Attorney General's office, to preliminarily identify drugs or prescription medication. It identified them as clonazepam, two milligrams. A third pill was in that pill bottle. It was marked GG249. It was a bar-shaped pill. Later using the drugs.com website, it was identified as alprazolam.
>
> So none of the three drugs in that actual pill bottle were the drugs that were supposed to be contained in that pill bottle, according to the labeling.
>
> …
>
> The second pill bottle had a label on it stating it was prescribed to a Freddie Self. In that pill bottle, the label stated it was to contain clonazepam, two milligrams. And in the pill bottle there were 15 pills marked T-e-v-a, 834, which were clonazepam, two milligrams….
>
> All the pills in both pill bottles were controlled substances.

N.T., 12/16/2014, at 43-44.

substance, and a consecutive term of one year probation for one count of possession of drug paraphernalia.[3]  This appeal followed.[4]

In White's first argument, she contends the trial court erred in denying her application for suppression by finding that Sergeant Parkinson had probable cause to place her under arrest for the crime of criminal trespass. Specifically, she states that while she was told she was no longer permitted on the premises of the McDonald's, the property in question was never defined or delineated.  White's Brief at 8.  Moreover, White argues:

> Where a [d]efendant was advised to "get off the property" but the property in question was never defined or delineated, the Court found that "no conditions were ever imposed upon the defendant's being on the parking lot; and it seems unlikely that any conditions for such action would have been 'lawful', in view of the public nature of the parking lot."  Commonwealth v. Herlihy, 42 Pa. D&C 3d 545, (Court of Common Pleas of Pennsylvania, Chester County, 1987).  The McDonalds' parking lot … is a public lot.  It is surrounded by other business on both sides with no physical barriers that prevent members of the public to walk across the McDonalds lot should they choose to do that.  Members of the public also do not need to obtain permission to walk across the McDonald's parking lot, they are free to walk on this public property.

*Id.* at 8-9 (record citation omitted).

_____

[3]  No further penalty was imposed on the remaining charge.

[4]  On April 7, 2015, the trial court ordered White to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  White filed a concise statement on April 28, 2015.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 3, 2015.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted), *cert. denied*, 562 U.S. 832 (2010).

Here, as stated above, White contends the officer did not have probable cause to arrest her for criminal trespass (defiant trespasser) under Subsection 3503(b)(1)(i).

> To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested. *Commonwealth v. Holton*, 2006 PA Super 234, 906 A.2d 1246, 1249 (Pa. Super. 2006). A police officer must make a common sense decision whether there is a fair probability that a crime was committed by the suspect. *Id.* Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious

> police officer guided by experience and training. ***Commonwealth v. Clark***, 558 Pa. 157, 164, 735 A.2d 1248, 1252 (1999); ***Holton***, ***supra*** at 1249; ***Commonwealth v. Nobalez***, 2002 PA Super 255, 805 A.2d 598, 600 (Pa. Super. 2002). "[P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [human beings] act." ***Commonwealth v. Wright***, 2005 PA Super 35, 867 A.2d 1265, 1268 (Pa.Super. 2005), *appeal denied*, 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied*, 546 U.S. 1104, 126 S. Ct. 1047, 163 L. Ed. 2d 879 (2006) (citation and internal quotation omitted).

***Commonwealth v. Wells***, 916 A.2d 1192, 1195 (Pa. Super. 2007).

Furthermore, a person commits the offense of defiant trespass, "[i]f knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass has been given by actual communication to the actor." 18 Pa.C.S. § 3503(b)(1)(i). Therefore, "in order to establish a violation it is necessary to prove that the defendant: 1) entered or remained upon property without a right to do so; 2) while knowing that [she] had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass." ***Commonwealth v. Namack***, 663 A.2d 191, 194 (Pa. Super. 1995).[5]

Here, the trial court found the following:

---

[5] Additionally, we note that the "crime of defiant trespass thus includes an element of intent or *mens rea*. This element of intent, like every other element of the crime, must be proven beyond a reasonable doubt if the conviction is to survive a challenge to the sufficiency of the evidence." ***Namack***, 663 A.2d at 194 (citations omitted).

Contrary to [White]'s arguments, the evidence of record reveals that Sergeant Parkinson had probable cause to arrest [White] on January 31, 2014. On August 13, 2013, [White] was lawfully at the McDonald's restaurant in Caln Township when she was involved in a disruptive argument with a friend inside the restaurant. The manager of the restaurant asked [White] to leave because [she] was loud, aggressive, using profanity and causing a general disturbance. [White] left, but later returned and engaged in an argument with an employee, continuing to use profanity. When [White] left the restaurant the second time, she went outside the restaurant and lay on the sidewalk, exposing the top half of her body.

The manager of the McDonald's called the police, who quickly responded to the scene. Both the manager and the police officer verbally communicated to [White] that she was to leave the premises immediately and that she was not permitted to return. On January 13, 2014, [White] returned to the McDonald's property, knowing that she was not licensed or privileged to remain on the property, and after receiving direct verbal notice that she was not permitted to be on the property.

[White] cites the case of Commonwealth v. Herlihy, 42 Pa.D.&C.3d 545 (1987) in support of her arguments that she was on public property and she was not committing a crime; therefore, Sergeant Parkinson had no probable cause to arrest her for criminal trespass. Herlihy is distinguishable from the case at bar. In Herlihy, the defendant was charged with defiant trespass, 18 Pa.C.S. § 3503(b), for being in a parking lot. A week before he was charged, the defendant had been told, by an administrator for the Women's Suburban Clinic, located in the parking lot, to "get off the property." Herlihy, at 547. The defendant raised the defense under section 3503(c)(2) that the parking lot was open to the public and he had complied with all the lawful conditions imposed on access to or remaining on the property.

The trial court held that no conditions were ever imposed upon the [d]efendant's being in the parking lot. When the defendant was told to "get off the property", the "property" in question was never defined and delineated. Herlihy, at 547. The Women's Surburban Clinic was part of a three-building

- 8 -

retail, commercial and professional complex. Id. When the defendant was charged with criminal trespass, he was not in the Women's Suburban Clinic, but only in the parking lot. The administrator of the Women's Suburban Clinic did not place any restrictions on the defendant with regard to his presence in the parking lot when she asked him to leave the clinic. Id.

At bar, a parking lot surrounding this McDonald's restaurant is owned by McDonald's. The parking spaces are only for those members of the public visiting McDonald's. Although there is a laundromat on one side of McDonald's and a dentist's office on the other side, these businesses have their own parking lots and do not share a parking lot with McDonald's. Exhibits C-1 through C-3 show that the parking lots for these businesses are not connected to the McDonald's parking lot and there would be no reason for a patron of the laundromat or the dentist's office to drive through McDonald's to get to these businesses.

When [White] was told on August 13, 2013 to vacate the premises and not return, this included the parking lot. [White] was in the parking lot when she was told by both Ms. Ortega, the manager of McDonald's and Sergeant Parkinson that she was to leave the premises and she was not permitted to return. Sergeant Parkinson specifically informed [White] that she was not permitted to be on the "whole" property. Although Ms. Ortega and Sergeant Parkinson actually communicated to [White] that she was not permitted to return to the property, including the parking lot, [White] returned to McDonald's approximately five months later knowing she was not licensed or privileged to be there. Sergeant Parkinson recognized [White] from the previous encounter and knew that she was not permitted on the property. At that time, Sergeant Parkinson possessed the requisite probable cause to arrest [White] for the commission of the crime of criminal trespass.

Trial Court Opinion, 6/3/2015, at 5-7 (record citations omitted).

We accept the trial court's well-reasoned analysis and agree that based on the totality of the circumstances as viewed through the eyes of a reasonable police officer guided by experience and training, Sergeant

Parkinson possessed probable cause to arrest White as a defiant trespasser. **See Wells**, **supra**. Particularly, we emphasize that White was in the parking lot when she received verbal communication from both Ortega and Sergeant Parkinson that she was not permitted to return to the property. Approximately five months later, she came onto the property, making several passes through the parking lot, without the right to do so and knowing that she did not have a license or privilege to be there. **See Namack**, **supra**.[6] Accordingly, we conclude White's suppression issue warrants no relief.

In White's second argument, she contends there was insufficient evidence to convict her of criminal trespass based on her mere presence and/or involuntary presence. White's Brief at 9-10. She argues that the nature of her "conduct as a passive passenger in a car that drove through a parking lot was a de minimis infraction of the conduct charged." **Id.** at 10. White states, "She was driven onto the parking lot of the McDonald[']s as a passenger in a car that never even stopped or parked as it briefly drove through the lot." **Id.** Moreover, she asserts,

> [T]he court lacked sufficient evidence to find that [her] brief, involuntary presence … on the McDonald's parking lot was

_____

[6] We note White does not raise an argument that the prohibition notice had gone stale when she returned to the property five months later.

an intentional action on her part to commit the offense of [c]riminal [t]respass.  She did not walk or drive onto the lot of her own volition nor did she even remain on the lot in a car for any longer than it was necessary for the car to exit the lot.

*Id.*[7]

With the elements of the crime set forth above, our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. LaBenne*, 21 A.3d 1287, 1289 (Pa. Super. 2011),

*quoting* *Commonwealth v. Brooks*, 7 A.3d 852, 856–857 (Pa. Super.

2010).

---

[7]  It merits mention White does not challenge the sufficiency of the evidence with respect to the remaining convictions.

However, before we may address the merits of this issue, we must determine whether White properly preserved the claim. In her concise statement, as ordered by the court to file, White identified the following relevant issue she wished to raise on appeal:

> 2) Did the trial court verdict of Guilty on the charge of Criminal Trespass go against the weight and sufficiency of evidence presented at [White]'s bench trial?

Concise Statement of Matters Complained on Appeal, 4/28/2015.

Rule 1925 requires an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues[.]" Pa.R.A.P. 1925(b)(4)(ii). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Commonwealth v. Allshouse**, 969 A.2d 1236, 1239 (Pa. Super. 2009) (failure to adequately identify issues "impede[s]" trial court "in its preparation of a legal analysis which is pertinent to those issues.").

Here, the court did address White's sufficiency claim generally but did not specifically analyze her mere, involuntary presence and *de minimis* conduct assertions. Indeed, the trial court found the following:

> The testimony of Caroline Ortega and Sergeant Steven Parkinson given at the suppression hearing and at trial shows that [White] entered the McDonald's property without a right to do so, knowing that she was not licensed or privileged to remain on the property, and after receiving direct verbal notice that she was not permitted to be on the property. Both Caroline Ortega and Sergeant Parkinson communicated to [White] that she was to immediately leave the property on August 13, 2013 and she was

- 12 -

never to return to the property, including the restaurant and the parking lot.

Contrary to [White]'s arguments, the McDonald's is private property, owned by McDonald's, posted with "No Loitering" signs. The evidence presented suggests [White] was not passing through the McDonald's property in order to enter another property. The parking lot serves only the McDonald's and does not provide access to any other businesses. [White] was solely on the McDonald's property where she was not permitted to be.

Trial Court Opinion, 6/3/2015, at 8-9.

We note that ordinarily, a defendant waives a sufficiency claim where she fails to indicate with specificity which element of a crime the Commonwealth failed to prove. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.").

Based on the lack of specificity regarding what element of the crime the Commonwealth failed to establish, we are compelled to conclude White waived her claim by filing a deficient concise statement.[8] Accordingly, her second argument fails.

Judgment of sentence affirmed.

_____

[8] Nevertheless, if White had not waived the argument, we would have found there was sufficient evidence to convict her of criminal trespass under Section 3503(b)(1)(i) based on the trial court's reasoning.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016